**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**TATUM S.,**

        **Plaintiff,**

    v.                          **Civil Action 2:25-cv-00932**
                                   **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Tatum S., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Court **SUSTAINS** Plaintiff's Statement of Errors (Doc. 10), **REVERSES** the Commissioner of Social Security's nondisability finding, and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I.    BACKGROUND

Plaintiff filed her applications for DIB and SSI with a protective filing date of February 15, 2023, due to rheumatoid arthritis, fibromyalgia, neuropathy, right ankle surgery, muscle spasms, coronary heart disease, potassium deficiency, hiatal hernia, collapsed left lung lobe, depression, and anxiety. (R. at 345–52, 387). After her applications were denied initially and on reconsideration, Administrative Law Judge Jeannine Lesperance (the "ALJ") held a telephone hearing on June 3, 2024. (R. at 39–89). The ALJ denied benefits in a written decision on August 15, 2024. (R. at 15–38). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on August 18, 2025 (Doc. 1), and the Commissioner filed the administrative record on November 17, 2025. (Doc. 9).  The matter has been briefed and is ripe for consideration.  (Docs. 10, 11, 12).

### A. Relevant Statements to the Agency, Hearing Testimony, and Relevant Medical Evidence

The ALJ summarized Plaintiff's statements to the agency and the testimony from the administrative hearing as follows:

> In a Function Report, [Plaintiff] reported that she lives in an apartment with friends; additionally, she reported that her daughter do the chores, she independently manages his personal care, but no longer takes showers, due to a risk of falling, she travels by using transportation services or riding with her daughter, she shops in stores for food items, she can count change, she socializes with others in person, by telephone, and by video chat, she gets along with family, friends, neighbors, and others, she can follow written instructions, and she reported she could handle but usually needs to have spoken instructions repeated, and she reported that she can handle stress and changes in routine, let's its physically demanding (3E). During the hearing, she testified that she is unable to work, due to experiencing fibromyalgia symptoms, including brain fog, she experiences numbness in her feet and hands, and she testified that she has about 15 - 20 migraines a month (Hearing Testimony).

(R. at 22).

The ALJ also summarized Plaintiff's medical records, which the Court discusses in more detail below.  (R. at 26–28).

### B. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through March 31, 2027.  (R. at 20).  The ALJ found that Plaintiff has not engaged in substantial gainful activity since June 1, 2022, her alleged onset date of disability.  (*Id.*).  The ALJ determined that Plaintiff suffered from the severe impairments of migraine; obesity; degenerative disc disease of the lumbar spine; and fibromyalgia.  (R. at 21).  The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meets or medically equal a listed impairment.  (R. at 23).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record [the ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; she could stand, walk, and/or balance for 4 hours in an 8-hour workday; she could sit for 6 hours in an 8-hour workday; she could frequently push and/or pull with the bilateral lower extremities; she could occasionally climb ramps and stairs; she could occasionally stoop, kneel, crouch, and crawl; she should avoid climbing ladders, ropes, or scaffolds; and she should avoid working at unprotected heights.

(R. at 25).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 30).

Relying on the vocational expert ("VE")'s testimony, the ALJ concluded that Plaintiff can perform her past relevant work as a data entry clerk and claims adjuster. (R. at 31). Further relying on the VE testimony, the ALJ determined that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a router, inspector/hand packager, or small products assembler. (R. at 32–33). Consequently, the ALJ concluded that Plaintiff has not been disabled within the meaning of the Social Security Act since June 1, 2022. (R. at 33).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III.    DISCUSSION

In her Statement of Errors, Plaintiff contends that the ALJ improperly evaluated the medical source opinion of treating neurologist, Kevin Weber, M.D. (Doc. 10 at 6–9). Plaintiff next alleges that the ALJ committed reversible error because she improperly evaluated Plaintiff's fibromyalgia and its symptoms. (*Id.* at 10–12). She asserts that not only did the ALJ impermissibly consider objective findings in evaluating Plaintiff's fibromyalgia, the ALJ further gave little explanation for how she "reconciled" this diagnosis. (*Id.*). The Commissioner counters that the ALJ properly considered the record in both instances. (Doc. 11 at 4–6). Ultimately, the Court need only consider Plaintiff's second assignment of error.

SSR 12-2p states that fibromyalgia is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p; Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869, at *2 (S.S.A. July 25, 2012). SSR 12-2p requires that, after a finding that a plaintiff's

4

fibromyalgia was a medically determinable impairment, the ALJ consider fibromyalgia in the

remaining steps of the sequential evaluation process. As the Sixth Circuit noted,

> SSR 12-2p describes criteria for establishing that a person has a medically determinable impairment [ ] of fibromyalgia, *id.* at *2–3, the sources of evidence the ALJ may look to, *id.* at *3–4, and how a claimant's subjective assertions of pain and functional limitations are evaluated, *id.* at *4. [SSR 12-2p] also states that fibromyalgia should be analyzed under the traditional five-step evaluation process used for analyzing other claims for SSI. *Id.* at *5–6. Importantly . . . [SSR 12-2p] merely provides guidance on how to apply pre-existing rules when faced with a claimant asserting disability based on fibromyalgia.

*Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398–99 (6th Cir. 2016) (citation modified).

Simply put, "a *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability

benefits[.]" *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in

original) (citing *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir. 1996) ("Some people may have

a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the

question is whether [claimant] is one of the minority.") (citations omitted)). As such, in claims

involving fibromyalgia, an ALJ must "decide . . . if the claimant's pain is so severe as to impose

limitations rendering her disabled." *Markesha D. v. Comm'r of Soc. Sec.,* No. 2:21-CV-4515,

2022 WL 1701915 (S.D. Ohio May 27, 2022), *report and recommendation adopted*, No. 2:21-

CV-4515, 2022 WL 4094511 (S.D. Ohio Sept. 7, 2022) (citations omitted).

Here, the ALJ discussed Plaintiff's fibromyalgia at each relevant step of the sequential

evaluation. At step two, the ALJ considered Plaintiff's fibromyalgia and found it to be a severe

impairment. (R. at 21). When later discussing Plaintiff's fibromyalgia at step three, the ALJ noted:

> Next, I have also considered [Plaintiff]'s fibromyalgia under Social Security Ruling 12-2p. As noted therein, there is no listing for fibromyalgia. Regarding the issue of equivalency, there is no evidence to show that this condition closely approximates the requirements of any impairment in Appendix 1 in terms of severity or duration. Moreover, the record notes that the record fails to document recurring emergency care or inpatient hospitalizations, due to fibromyalgia. Accordingly, for the reasons

discussed above, I find that there is no evidence to show that this condition closely approximates the requirements of any medical listing.

(R. at 23–24).

Then in the next step, the ALJ noted that Plaintiff testified that she was unable to work due to experiencing fibromyalgia symptoms, including brain fog.  (R. at 26 (citing R. at 64–65)).  Still, the ALJ found that no source observed confusion or cognitive deficit and that Plaintiff could relate medical histories and exercise judgment to make decisions about her care.  (R. at 28).

The ALJ went on to reference that Plaintiff sought treatment of her fibromyalgia in September 2021, where she reported regular flares and missing 1–2 days of work per week.  (R. at 26 (citing R. at 677)).  She further considered that Plaintiff reported symptoms such as body aches, sweats, internal burning feeling, lack of energy and pain.  (*Id.* (citing R. at 677)).  And, when the doctor examined her, Plaintiff was noted as having widespread tenderness and was "treated conservatively."  (*Id.* (citing R. at 678 ("widespread tender points"), 680 (notation proscribing Cymbalta and recommending stress, exercise, and sleep management with Plaintiff's primary care physician for control))).  The ALJ stated that Plaintiff again sought treatment for fibromyalgia in January 2023.  (R. at 27 (citing R. at 46)).  Then in July 2023, Plaintiff presented for a rheumatology visit and endorsed weekly flares with symptoms, including polyarthralgia, total body head to toe pain, fatigue, migraines, and weakness.  (R. at 28 (citing R. at 1112–16)).  The ALJ noted that her diagnoses included fibromyalgia, and she "continued to be treated conservatively."  (*Id.* (citing R. at 1112–16 (noting Plaintiff's symptoms were consistent with fibromyalgia flares, prescribing Lyrica, and recommending following up with pain management)).

The ALJ considered that in August 2023, Plaintiff attended a pain management follow-up visit.  (*Id.* (citing R. at 1797)). During the physical examination, "she was noted to have an antalgic gait, lumbar spasms and decreased range of motion, sacroiliac joints tenderness to palpation, and

other abnormal findings." (*Id.* (citing R. at 1798–99)).  Plaintiff "continued to be treated conservatively" for fibromyalgia following that appointment and another in February 2024. (*Id.* (citing R. at 1797 (prescribing cyclobenzaprine), 1864 (recommending following up with rheumatology and continuing Cymbalta))).  The ALJ then noted "[r]heumatology also suggests fibromyalgia but also records no objective signs/findings. However, considering the 6 co-occurring conditions I gave the benefit of the doubt in finding that fibromyalgia is medically determinable though there is very little support for it in this record." (R. at 29).  And the ALJ highlighted that despite a few appointments where Plaintiff presented antalgic gait, she "typically has normal motor, sensory, and strength findings on exams." (*Id.*).  The ALJ commented that though the record contained limited information about Plaintiff's daily activities, Plaintiff reported in June 2022 that she exercised by walking five miles three times per week and worked after her onset date. (*Id.* (citing R. at 573–74)).  The ALJ further found that Plaintiff did not report any "chronic significant" medication side effects, and though she reported aggravating factors, they were not "routinely observed." (*Id.*).

The ALJ ultimately concluded that based on the evidence, including records of Plaintiff's "conservative treatment for . . . fibromyalgia," Plaintiff could perform light level work. (R. at 28). Still, considering the medical opinions in the record, the ALJ noted that she found more restrictions warranted than what the state agency medical reviewers opined. (R. at 30 (citing *e.g.*, R. at 222–23)).  In justifying these departures, the ALJ cited to Plaintiff's fibromyalgia. (*Id.* ("Considering her diagnoses of fibromyalgia and obesity, I limited her ability to push and/or pull bilaterally, as opposed to only in the right leg. Considering her lumbar condition, fibromyalgia, and obesity, I reduced stooping to occasional, and balance was reduced to 4 hours in an 8-hour day to be consistent with the walking and standing limitations.")).

The Court finds that this discussion, albeit detailed, does not adequately explain why the ALJ discounted Plaintiff's subjective complaints of fibromyalgia for a couple of reasons.

First, as discussed above, the ALJ's notations that Plaintiff underwent only conservative treatment for fibromyalgia permeated her opinion.  (*See* R. 26–28).  The ALJ expressly cited "conservative treatment" as a reason Plaintiff could perform light level work.  (R. at 28).  And the ALJ again pointed to "conservative treatment" in considering Plaintiff's subjective complaints related to her physical symptoms.  (R. at 28–29 ("Her course of treatment was conservative and primarily consisted of medication management.")).  Yet courts have found that a generalization of "conservative treatment" "is irrelevant to whether [a plaintiff's] fibromyalgia was severe enough to be completely disabling."  *Huffman v. Saul*, No. 5:19-CV-449-CHB, 2020 WL 6937441, at *7 (E.D. Ky. Nov. 24, 2020); *see also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852 (6th Cir. 2011) ("[M]ore 'aggressive' treatment is not recommended for fibromyalgia patients.").  Though the regulations certainly instruct an ALJ to consider treatment that a plaintiff receives to alleviate her symptoms, *see* 20 C.F.R. § 404.1529(c)(3), the ALJ's emphasis on Plaintiff's conservative fibromyalgia treatment at this stage of the sequential analysis "suggests that [the ALJ] did not account for the nature of fibromyalgia in assessing [Plaintiff's] RFC."  *Sunshine K. v. Comm'r of Soc. Sec.*, No. 3:23-CV-00582-CHL, 2025 WL 903838, at *7 (W.D. Ky. Mar. 25, 2025); *see also Quick v. Comm'r of Soc. Sec.*, No. 16-CV-12582, 2017 WL 1963905 (E.D. Mich. Apr. 25, 2017)*, report and recommendation adopted*, No. 16-CV-12582, 2017 WL 1954568 (E.D. Mich. May 11, 2017) ("The ALJ's finding that Quick treated her physical symptoms conservatively thus provides little or no support for discounting Quick's alleged limitations resulting from fibromyalgia.").

Second, in discounting Plaintiff's subjective complaints, the ALJ referred to a lack of "objective signs/findings" and Plaintiff's "typically normal motor, sensory and strength findings

on exams." (R. at 29 ("I gave the benefit of the doubt in finding that fibromyalgia is medically determinable though there is very little support for it in this record.")).  The ALJ also discounted Plaintiff's reports of brain fog because "no source observed confusion or cognitive deficits."  (R. at 28).  Time and again, courts have found that a lack of objective evidence is not sufficient to discount fibromyalgia symptoms.  *See, e.g., Paige C. v. Comm'r of Soc. Sec.*, No. 1:25-CV-00072, 2025 WL 3718787 (S.D. Ohio Dec. 23, 2025) ("[I]t would be 'nonsensical to discount a fibromyalgia claimant's subjective complaints of pain based upon lack of objective medical evidence, as such evidence is generally lacking with fibromyalgia patients.'" (quoting *Rogers*, 486 F.3d at 248 (citation omitted))*, report and recommendation adopted*, No. 1:25-CV-00072, 2026 WL 77635 (S.D. Ohio Jan. 9, 2026); *Fyffe v. Comm'r of Soc. Sec.*, No. 1:21-CV-332, 2022 WL 2176538, at *10 (N.D. Ohio June 16, 2022) ("[T]he Sixth Circuit has described the lack of corroborative objective findings as 'basically irrelevant' in the context of analyzing fibromyalgia symptoms.") (citation omitted); *Madinger v. Comm'r of Soc. Sec.*, No. 2:16-CV-882, 2019 WL 5091958 (S.D. Ohio Oct. 11, 2019) ("[T]he Sixth Circuit has repeatedly and consistently recognized that fibromyalgia patients typically manifest normal muscle strength and neurological reactions and have full range of motion." (citation and internal quotation marks omitted)).  This is especially true where the record contains "complaints of pain that Plaintiff—and her providers— attribute at least in part to fibromyalgia."  *James v. Comm'r of Soc. Sec.*, No. 1:19 CV 570, 2020 WL 836493, at *8 (N.D. Ohio Feb. 20, 2020); (*see, e.g.*, R. at 1115–16 (attributing "flares weekly consisting of malar rash, polyarthralgia, total body head to toe pain, fatigue, migraines, weakness to fibromyalgia)).

Still, contrary to Plaintiff's suggestion, the ALJ's reliance on objective medical evidence is not *per se* impermissible; in fact, SSR 12-2p requires such consideration.  SSR 12-2p, 2012 WL

3104869, at *2.  ("[W]e must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.").  And "[i]t is true that an ALJ's reliance on a lack of objective findings may not require remand where the ALJ also relies on other considerations such as a claimant's activities of daily living or improvement with treatment." *Rossi v. Comm'r of Soc. Sec.*, No. 1:25-CV-00625-DCN, 2025 WL 3671796 (N.D. Ohio Dec. 18, 2025), *report and recommendation adopted*, No. 1:25 CV 625, 2026 WL 309536 (N.D. Ohio Feb. 5, 2026).  But the ALJ's discussion here falls short of rounding out her conclusion.

For example, the ALJ's discussion of Plaintiff's daily activities is vague as it relates to Plaintiff's fibromyalgia.  (R. at 29 (citing R. at 573–74)).  The ALJ first notes that there is "limited information" about Plaintiff's daily activities "outside of her reports in relation to her disability claim."  (R. at 30).  The ALJ then cites one clinical note from June 2022 reporting that Plaintiff exercised by walking five miles three times per week and that she was working.  (*Id.* (citing R. at 573–74)).  Even if true that information about Plaintiff's daily activities in the record is limited, the ALJ's discussion "ignores qualifications on those daily activities contained within the record." *Sunshine K.*, No. 3:23-CV-00582-CHL, 2025 WL 903838, at *7; *cf. Lucas v. Comm'r of Soc. Sec.*, No. 18-10087, 2019 WL 1117927, at *9 (E.D. Mich. Feb. 21, 2019) (remanding in part because the ALJ cited "inconsistency" between a plaintiff's stated activities and the record, but did not engage with a plaintiff's allegations that she had good days and bad days), *report and recommendation adopted*, No. 18-10087, 2019 WL 1112280 (E.D. Mich. Mar. 11, 2019).  (*Cf. e.g.*, R at 63 (Plaintiff's testimony that she sleeps from 16 to 20 hours per day and that she would "like to go back to work") (Plaintiff's testimony that due to her pain level, she has trouble walking distances and is able to walk only 75 to 100 feet "on a good day"), 65 (Plaintiff's testimony that

10

she "used to be extremely fit and able to do things" but she no longer can because her fibromyalgia flares last days or weeks)).  The ALJ does not otherwise address Plaintiff's daily activities as relevant to her fibromyalgia pain elsewhere in the opinion.  (*See, e.g.,* R. at 22 (stating only Plaintiff testified she cannot work due to experiencing fibromyalgia symptoms such as brain fog)).

The ALJ further found that Plaintiff "minimized her daily activities in her adult function report."  (R. at 29 (citing R. at 398–406)).  But her only explanation for this conclusion was Plaintiff "indicated she relied heavily on her daughters so that she would not fall," yet there were not "frequent falls or injuries from falls" documented in the record.  (*Id.*).  Ultimately, is it unclear from the ALJ's opinion how this analysis relates to Plaintiff's fibromyalgia.  *See Keller v. Comm'r of Soc. Sec.*, No. 2:18-CV-341, 2019 WL 336560, at *10 (S.D. Ohio Jan. 28, 2019) (finding an ALJ's observation that a plaintiff did not report falls did not sufficiently support discounting the plaintiff's subjective complaints of pain), *report and recommendation adopted*, No. 2:18-CV-341, 2019 WL 632359 (S.D. Ohio Feb. 14, 2019).  Additionally, "[t]he Sixth Circuit has expressed skepticism that a plaintiff's limited ability to perform basic activities of daily living is a basis for discounting his or her subjective complaints of pain related to fibromyalgia."  *Id.* at *9 (citations omitted).  So, the ALJ's brief mention that Plaintiff can independently manage her personal care and shop in stores does not help much.  (*See* R. at 22 ("[T]he above noted-summary of her daily activities shows that she can concentrate, persist, and maintain pace to perform many daily activities, supporting a finding that she retains the ability to do the same with respect to work activities.")).

Even more, though the ALJ repeatedly states Plaintiff was treated conservatively for fibromyalgia, nowhere does the ALJ address whether Plaintiff's fibromyalgia was controlled with

11

treatment. *Cf. Rossi*, 2025 WL 3671796, at *11 (remanding in part because the ALJ did not "indicate what, if any, conclusions he drew from" a plaintiff's fibromyalgia treatment).

In sum, in reconciling Plaintiff's fibromyalgia, the ALJ relied primarily upon evidence that courts largely have found to be irrelevant. And the rest of the analysis did not sufficiently articulate a logical bridge between the relevant evidence and the outcome. *See, e.g., Foster v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 709, 717 (S.D. Ohio 2019). Ultimately, the ALJ may not find Plaintiff disabled. As stated, a diagnosis of fibromyalgia does not automatically entitle her to disability benefits. *Vance,* 260 F. App'x at 806. But, as it stands, the Court cannot trace the ALJ's reasoning and cannot say that the ultimate conclusion is supported by substantial evidence. Consequently, this matter will be remanded for further consideration.

As a final note, because the Court remands this case, it need not address Plaintiff's assigned error about the ALJ's treatment of Dr. Weber's opinion. The ALJ may consider that issue on remand, if appropriate.

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors (Doc. 10) be **SUSTAINED** and the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

IT IS SO ORDERED.

Date: April 1, 2026                    *s/ Kimberly A. Jolson*
                                        KIMBERLY A. JOLSON
                                        UNITED STATES MAGISTRATE JUDGE